Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, June 28, 2006 2:16:25 PM

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE: )
 )
WEIR-PENN, INC., ) CASE NO. 06-56
 )
    Debtor. )

## MEMORANDUM OPINION

United Bank, Inc. ("United Bank"), filed a motion for relief from the automatic stay of the Bankruptcy Code to repossess convenience store property and enforce its security rights under State law.[1] Thomas H. Fluharty, the Chapter 7 trustee (the "Trustee") for Weir-Penn, Inc. (the "Debtor"), opposes the motion on the basis that United Bank is not a secured creditor because it cannot produce an authenticated security agreement. The Debtor joins in the Trustee's objection.

The court held a telephonic hearing in this matter on March 23, 2006, in Wheeling, West Virginia, at which time the court took the motion under advisement and ordered supplemental briefing. That briefing is now complete, and for the reasons stated herein, the court will grant the motion.

## I. BACKGROUND

The Debtor operated Convenient Food Mart # 3818 in Weirton, West Virginia. On October 31, 1997, the Debtor borrowed $110,000 from United Bank, which allegedly took a security interest in the Debtor's assets, including: equipment, inventory, and accounts. United Bank filed a UCC-1

---

[1] After United Bank filed its motion, the Chapter 7 trustee sold the assets subject to United Bank's purported security interest for $21,000. Resolution of the motion for relief from the stay will resolve whether or not United Bank is entitled to the sale proceeds. All the parties consented to adjudicate United Bank's lien rights using this procedure.

1

financing statement on November 6, 1997, but it cannot produce a copy of the security agreement purportedly executed by the Debtor.  Anthony J. Gentile, Sr., the market president for United Bank, signed an affidavit on February 21, 2006, stating that the security agreement could not be located, and that it had likely been destroyed in a September 2004 or January 2005 flood.

The Debtor refinanced the October 31, 1997 loan twice: first, on July 8, 1999, for $40,135; then on September 10, 2002, for $110,000.  United Bank filed a UCC-3 continuation statement on September 9, 2002.  When the Debtor defaulted on the note on January 12, 2006, the payoff amount was $66,747.

On February 10, 2006, the Debtor filed its Chapter 7 bankruptcy petition.  On March 21, 2006, the assets subject to United Bank's alleged security interest were sold by the Trustee for $21,000.  Those funds are being held by the Trustee pending the determination of United Bank's lien rights, if any, in the proceeds.

## II. DISCUSSION

United Bank asserts that the absence of a separate, written security agreement signed by the Debtor does not negate its security interest in the Debtor's convenience store assets.  United Bank contends that the Debtor signed the financing statement listing the collateral subject to its interest – satisfying the writing requirement – and that the associated documentary evidence establishes the intent of the parties to give United Bank a security interest in the same categories of collateral listed on the financing statement.

The West Virginia Commercial Code (the "Commercial Code")[2] sets forth the requirements to create an enforceable security interest:

> [A] security interest is enforceable against the debtor and third parties with respect to the collateral only if:
>     (1) Value has been given;
>     (2) The debtor has rights in the collateral or the power to transfer rights in the

---

[2] The West Virginia Commercial Code was adopted from the Uniform Commercial Code; when the court cites to opinions from other states interpreting that state's commercial code, it does so with the understanding that the foreign state has adopted the same subsections from the Uniform Commercial Code as West Virginia.

2

>    collateral to a secured party; and
>    (3) One of the following conditions is met:
>       (A) The debtor has authenticated a security agreement that provides a description of the collateral . . . .

W. Va. Code § 46-9-203(b).

Here, there is no dispute that subsections (1) and (2) are satisfied. Without an authenticated security agreement that provides a description of the collateral, however, United Bank does not have an enforceable security interest. *E.g.*, *Mid--Eastern Electronics, Inc. v. First Nat'l Bank*, 455 F.2d 141, 146 (4th Cir. 1970) ("[P]ursuant to § 9-203(1)(b), a security agreement was required in order for the security interest to be enforceable."); *In re Hoyt's, Inc.*, 117 B.R. 226, 228 (Bankr. N.D. W. Va. 1990) (same).

The Commercial Code defines a "security agreement" as "an agreement that creates or provides for a security interest." W. Va. Code § 49-9-102(a)(76). No requirement exists that there be a separate written document labeled "security agreement" that has express language granting a security interest: once a debtor signs the financing statement the writing requirement is met, and the determination of whether the parties intended to create a security interest is an issue of fact that is garnered by reviewing "a collection of documents, no one of which contains granting language, but which in the aggregate disclose an intent to grant a security interest in specific collateral." Terry M. Anderson, Marianne B. Culhane, and Catherine Lee Wilson, *Attachment and Perfection of Security Interests Under Revised Article 9: A "Nuts and Bolts" Primer*, 9 Am. Bankr. Inst. L. Rev. 179, 188 (2001). *See also In re Numeric Corp.*, 485 F.2d 1328, 1331 (1st Cir. 1973) (providing that any writing, "regardless of label, which adequately describes the collateral, carries the signature of the debtor, and establishes that in fact a security interest was agreed upon, . . . satisfies both the formal requirements of the statute [9-203] and the policies behind it."); *Bank of Am. v. Outboard Marine Corp. (In re Outboard Marine Corp.)*, 300 B.R. 308, 321 (Bankr. N.D. Ill. 2003) (rejecting the theory that a security agreement must contain express words of grant as being fiercely criticized, too formalistic, unsupported by legislative history and grammatical logic, and ultimately discarded by courts and commentators).

3

In this case, the Debtor has signed a financing statement indicating that the Debtor may have granted United Bank a security interest in the categories or types of property listed. A considerable number of cases have held that a financing statement alone – the purpose of which is only to provide notice that a creditor may, or may not, have a security interest in the listed property – cannot double as a security agreement. *E.g.*, *Mid-Eastern Electronics, Inc. v. First Nat'l Bank*, 380 F.2d 355, 256 (4th Cir. 1965) (stating that a financing statement is only notice that a security interest is claimed with the acquiescence of the debtor). *Outboard Marine Corp.*, 300 B.R. at 322 (citing cases that hold a financing statement, by itself, cannot double as a security agreement); *Gibson County Farm Bureau Coop. Ass'n v. Greer*, 643 N.E.2d 313, 320 (Ind. 1994) ("[W]e are not willing to go so far as to hold that a standard-form UCC-1 financing statement alone is, as a matter of law, sufficient evidence that the parties intended to create a security interest . . . ."). Because a signed financing statement is deemed to satisfy the Statute of Frauds, however, the only other purpose behind requiring an "authenticated security agreement" is evidentiary as it relates to the intent of the parties to grant the creditor identifiable security. W. Va. Code § 46-9-203 cmt. 3 ("Under subsection (b)(3), enforceability requires the debtor's security agreement and compliance with an evidentiary requirement in the nature of a statute of frauds."); *Numeric Corp.*, 485 F.2d at 1332 ("[A]lthough a standard form financing statement by itself cannot be considered a security agreement, an adequate agreement can be found when a financing statement is considered together with other documents.").

Sufficient evidence exists in this case to establish the intent of the parties to create a security interest in the categories or types of property listed on the Debtor's financing statement. The September 10, 2002 promissory note states:

> **9. SECURITY.** This Loan is secured by separate security instruments prepared together with this Note as follows:
>
> | **Document Name** | **Parties to Document** |
> |---|---|
> | Deed of Trust - Leasehold . . . | Weir-Penn, Inc. |
>
> and by the following previously executed, security instruments or agreements: UCC Financing Statement on all business assets bearing file # 048209 recorded 11/16/1997 with the WV Secretary of State and executed by Weir-Penn, Inc as debtor and United National Bank (nka United Bank, Inc.) as Secured Party.

4

(Doc. No. 16, Exhibit C).

Accordingly, the September 10, 2002 promissory note, which is also signed by the Debtor, contains a security clause that states that the loan is secured by "previously executed, security instruments or agreements." The only item listed under this clause is the UCC Financing Statement. Taken together, the note evidences the intent of the parties to create a security interest ("This Loan is secured by . . . ."), and the financing statement, incorporated by reference in the security clause of the promissory note, provides a description of the collateral.[3] *E.g.*, *In re Bollinger Corp.*, 614 F.2d 924, 927-28 (3rd Cir. 1980) (holding that the financing statement alone met the requirement for a writing signed by the debtor and describing the collateral, and that the promissory note evidenced the intention of the parties to create a security interest in the listed collateral); *FD&S v. United States*, 574 F. Supp. 699, 702 n.11 (S.D. W. Va. 1983) (using the loan agreement and financing statement to prove the intent of the parties to grant a security interest in collateral in the absence of a separate written security agreement); *In re Center Auto Parts*, No. 214, 187-FW, 1968 U.S. Dist. LEXIS 12834 at *4-5 (C.D. Cal. Aug. 23, 1968) (concluding that the promissory note, which stated: "This note is secured by a certain financing statement," when combined with the financing statement itself, satisfied the requirement for a security agreement).

### III. CONCLUSION

The financing statement signed by the Debtor meets the basic § 9-203(b)(3)(A) requirements that there be a writing, signed by the Debtor, describing the collateral. The intent of the parties to

---

[3] Two additional documents exist that support the court's conclusion that the promissory note and the financing statement, taken together, satisfy the requirement of an authenticated security agreement. First, the Debtor apparently executed a corporate resolution granting Mr. Cottrill, the Debtor's president, the authority to execute a security agreement with United Bank. The authorization is neither signed by the corporate secretary that purportedly conferred the authorization, nor is it dated. The second document is the waiver of lien rights of the Debtor's landlord in favor of United Bank. The Debtor was not a party to that agreement. The documents support the conclusion, however, that the Debtor intended to grant a security interest to United Bank and that United Bank believed that it had obtained one from the Debtor.

create a security interest in the collateral listed on the financing statement is gleaned from the September 10, 2002 promissory note, which states that the note is secured by the financing statement. Accordingly, the Court will grant United Bank relief from the automatic stay to recover the proceeds of the sale of the collateral securing its September 10, 2002 loan to the Debtor.

The court will enter a separate order pursuant to Fed. R. Bankr. P. 9021.